14 So.2d 680

In re NUNEZ.

No. 37065.

June 21, 1943.

Charles A. McCoy, of Lake Charles, Hollingsworth B. Barret, of Shreveport, Frank Wm. Hart, of New Orleans, Guy V. Rich, of Bogalusa, and Benjamin Y. Wolf, of New Orleans, Chairman, Supreme Court Committee on Professional Ethics and Grievances.

L. H. Perez, of New Orleans, for defendant.

HIGGINS, Justice.

The Louisiana State Bar Association, through the Committee on Professional Ethics and Grievances, appointed by this Court under Article 13 of the Articles of Incorporation of the Association, instituted disbarment proceedings against the defendant, alleging that he had demeaned himself in an unethical and unlawful way in thirteen annulment and divorce proceedings by colluding with the principals, the curator ad hoc, and the trial judge, and in deceiving the judge and attempting to confer jurisdiction upon the 25th Judicial District Court, Parish of St. Bernard, in cases where the matrimonial domiciles and the places of abandonment were outside of the territorial limits of the court's jurisdiction, all as will more fully appear from the rec-

ords annexed to and made a part of the petition.

The defendant filed exceptions of no right and no cause of action and also asked for a subpoena duces tecum to have the Committee produce the record of its investigation of the defendant's conduct, in order that this record could be considered in connection with the petition and annexed documents in determining whether or not the Committee had alleged a right or a cause of action against him. The Committee had previously furnished the defendant's attorney with a copy of this record and readily consented that it be used by the court in deciding the issue presented.

Sections 2 and 4 of Article 13 of the Association's Articles of Incorporation read as follows:

"Section 2. Investigation of Complaints. All complaints looking to the suspension or disbarment of any member of the Bar of Louisiana shall be investigated by the Committee on Professional Ethics and Grievances."

"Section 4. Disbarment and Suspension. If, after investigation, a majority of the Committee shall be of the opinion that the member against whom the complaint has been made *has probably been guilty of a violation of the laws of the State of Louisiana relating to the professional conduct of lawyers and to the practice of law, or of a willful violation of any rule of professional ethics of sufficient gravity as to evidence a lack of moral fitness for the practice of law,* it shall be the duty of the Committee to institute in the Supreme Court a suit for the

disbarment or suspension of the accused member of the bar, and to designate one or more of their number to prosecute the same." (Italics ours.)

It is well-settled that allegations of fact set forth in a petition and not mere conclusions of the pleader are to be accepted as true for the purpose of determining whether an exception of no right of action is well-founded. Federal Land Bank of New Orleans v. Mulhern, 180 La. 627, 157 So. 370, 95 A.L.R. 948; Woolie v. Carson, etc., 177 La. 990, 149 So. 551; and Trumbaturi v. Katz & Besthoff, 180 La. 915, 158 So. 16.

The jurisprudence is clear that documents, records and exhibits annexed to and made a part of a petition control the allegations of the petition founded thereon. Alliance Trust Co. v. Paggi-Streater Co., 173 La. 356, 137 So. 60, and Claiborne v. Lezina, 175 La. 635, 144 So. 131.

There are ten divorce proceedings, which were filed by the defendant as the attorney for the various plaintiffs on the grounds of two and four years' continuous separation of the spouses. The first statute on this subject is Act 269 of 1916, which was amended by Act 31 of 1932 and Act 430 of 1938. In all three statutes either married party is granted the right to sue in the courts of this State at his or her residence, provided the period of residence is continuous for the same length of time of continuous separation necessary to grant a divorce. The first statute provided a period of seven years' continuous separation, the second, four years', and the third, two years'. In all other respects, they

are alike. In the ten cases in question, it appears that either the plaintiff or the defendant, or both, were residents of the Parish of St. Bernard and, consequently, the court had jurisdiction of them. In some of these divorce proceedings, the judgments were entered by default and, in others, they were granted contradictorily, the curator ad hoc representing the absentee. In each default case, service of the citation and the petition was legally made and the law's delays observed before entering the preliminary default and later having it confirmed. In the proceedings where a curator was appointed, the cases were set for trial and were contested by him. Notes of evidence were made and signed by the witnesses, who testified in the respective cases. There is nothing contained in these records which would indicate that there was collusion between the defendant as attorney for the plaintiffs and the principals therein, the curator, and the trial judge, nor is there anything to show that the trial judge was deceived by the defendant herein. Mention was made of the fact that the curator appointed by the court accepted service of the petition and waived citation on the same date he was appointed, with a view of showing it might have been a consent proceeding.

Article 116 of the Code of Practice, as amended by Act 167 of 1924, provides that " * * * the attorney at law so appointed may waive service and citation of the petition, but shall not waive time or any legal defense." Furthermore, it appears from the record in the removal suit of Perez, Dist. Atty. v. Meraux, Judge, 201 La. 498, 9 So.2d 662, that the defendant herein, as Assistant District Attorney, assisted the District Attorney in prosecuting the removal suit against the judge.

The thirteen records annexed to the petition in the instant case were not introduced by the district attorney in the removal suit against the judge but were filed in evidence by the attorney representing the judge for the purpose of showing that he was not guilty of operating a "divorce mill" in his court and that in these instances the procedure was somewhat similar to that followed in the cases referred to by the district attorney. They cover a period of about two years.

The defendant in the present case appeared before the Committee and denied that he had in any way deceived the trial judge or attempted to vest jurisdiction in the district court when it was without it, in order to obtain the judgments of divorce for his clients. He also stated that he had not colluded with either the district judge or the curator appointed by him, both of whom were politically unfriendly to him. He further denied that any of the judgments had been obtained by consent of the parties or without just and legal grounds.

Insofar as these records are concerned they do not bear out the petitioner's alleged general allegation of misconduct or wrongdoing by the defendant.

The eleventh record or annulment proceeding was predicated on the ground that the husband kidnapped the wife and in fear of her life she married him, but that, at the first opportunity, she escaped from

confinement and returned to her parents' home. This suit was also filed in St. Bernard Parish and neither the plaintiff nor the defendant lived there but the marriage license was obtained and the ceremony performed there. The defendant appeared through counsel and filed exceptions to the jurisdiction of the court ratione personae and ratione materiae. As far as the record shows, the matter is still pending on the exceptions. The defendant in his testimony before the Committee stated that he acted in good faith and explained that it was his opinion under the law that the court where the license was issued and the marriage ceremony performed had jurisdiction to entertain the suit for the annulment of the marriage contract because it was entered into there, even though the spouses lived elsewhere.

It certainly cannot be said that there was any collusion between the parties, the attorneys or the judge in this matter, because the jurisdictional issue was promptly raised after service of the citation and the petition on the defendant. There is nothing in the plaintiff's disbarment petition, the record of the annulment suit, nor the testimony of the defendant to show that he was guilty of misconduct or unethical practice in filing the suit in St. Bernard Parish. In fact, it appears that, as soon as the jurisdictional point was raised, the matter was held in abeyance and no deception was attempted or practiced. Under these circumstances it cannot be said that the attorney was guilty of wilful misconduct or bad faith justifying his disbarment or dis-

ciplinary action by this Court. Ex parte Mundy, 197 La. 850, 2 So.2d 624.

■ The twelfth record involves an annulment of a marriage on the ground that the defendant was married at the time he courted the plaintiff, illegally obtained the marriage license and had the marriage ceremony performed. The plaintiff's residence and domicile was with her parents in St. Bernard Parish and she lived with defendant less than two weeks and upon learning of the fraud practiced upon her, she went home to her parents. The defendant was a fugitive from justice and the district attorney's office was seeking to have him apprehended for the purpose of trying him on a charge of bigamy. A curator ad hoc was appointed to represent him and the note of evidence signed by the witnesses shows that the plaintiff was a victim of the unscrupulous and criminal act of the defendant, who contracted the second marriage with her when he was already married and his first wife, from whom he was not divorced, was alive. The law's delays were observed and the proceedings were conducted contradictorily.

The Committee has not referred us to any authority holding that the court in St. Bernard did not have jurisdiction of the case, but even if that were the law, there is nothing in this record to show that the defendant wilfully or intentionally, in an unethical and unlawful manner, attempted to confer jurisdiction on the court. He testified as to his good faith and there is no countervailing evidence in the Committee's report. Clearly, there is nothing to show

that this was a consent judgment or that he acted in a deceptive and collusive way with any one.

■ The thirteenth or last record covers a divorce wherein the plaintiff alleged that the husband had committed adultery with a woman in the City of New Orleans on December 14, 1937. The marriage was contracted December 16, 1929, in Plaquemines Parish. No children were born of the union nor any community property acquired. The suit was filed on May 24, 1938. The defendant was served with a copy of the petition and citation at Alluvial City, Parish of St. Bernard, on May 25, 1938. The note of evidence is signed by two witnesses. A judgment by default was entered on June 10, 1938, and confirmed on June 15, 1938. The service of the petition and the citation appear to be regular and the law's delays were observed.

When questioned by the Committee with reference to this case, the defendant testified that the plaintiff and the defendant lived in St. Bernard Parish and that the suit for a divorce was filed in good faith upon just legal grounds, as shown by the note of evidence signed by the witnesses and filed in the record.

The defendant testified that he devoted his time exclusively to the practice of law in St. Bernard Parish and that in several divorce suits, in drafting the petitions, he inadvertently failed to set forth the parish in which the plaintiff was residing but stated that the plaintiff was a resident of the State of Louisiana; that this error was an oversight and was caused by following another petition used as a form; and that it was shown on the trial of these cases that the court had jurisdiction of both of the parties, because they were domiciled in the Parish, except in the proceedings for a divorce on the grounds of continuous separation where the law expressly permitted the suits to be filed at the residence of the plaintiffs.

The Committee has not expressed any desire to amend the petition or to supplement the report filed here after its investigation.

■ Since the allegations of fact of the petition and the records annexed thereto, supplemented by the Committee's report, do not show that the defendant acted unethically and unlawfully or that he was guilty of wrongdoing in acting as attorney for the plaintiffs in the series of suits in question, the exceptions of no right and no cause of action are well-founded and are sustained.

For the reasons assigned, the petition of the Committee is dismissed.

O'NIELL, C. J., and ROGERS, J., absent.